```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
───────────────────────────────────────

CENTER FOR AMERICAN DANCE, INC., ET AL.,

                  Plaintiffs,

   - against -

CHRISTOPHER D'ADDARIO, ET AL.,

                  Defendants.

───────────────────────────────────────

20-cv-7687 (JGK)

MEMORANDUM OPINION AND ORDER

**JOHN G. KOELTL, District Judge:**

The Court has received the Report and Recommendation by Magistrate Judge Barbara Moses dated January 26, 2024. ECF No. 49 ("R&R"). After carefully considering the thorough R&R and the objections by the plaintiffs, the Court adopts in part and rejects in part the R&R.

**I.**

The Court adopts the recitation of facts and procedural history set forth by Judge Moses in the R&R, see R&R at 2-11, and repeats only those facts relevant to the consideration of the plaintiffs' objections.

The Complaint alleged that the plaintiffs Center for American Dance, Inc. (d/b/a Joffrey Ballet School) and Joffrey Ballet Center for American Dance, Inc. -- referred to collectively as the "Joffrey Ballet School" -- together are a school that specializes in providing classical ballet training to students under the "Joffrey Ballet" name. Compl. ¶¶ 8-10, ECF

1

No. 1. The plaintiffs allege that they have common law trademark rights to JOFFREY BALLET dating back to 1976. Id. ¶ 12. Defendant D'Addario is a former executive director of the Joffrey Ballet School. Id. ¶ 18. The Complaint alleges that D'Addario, while he was executive director, registered and maintained various domain names on behalf of the Joffrey Ballet School. Id. ¶¶ 22-23. The Complaint alleges that D'Addario transferred various of these domain names to his personal account and thereafter resigned as executive director of the Joffrey Ballet School. Id. ¶¶ 26-28. Given the fact that the defendants have defaulted, none of these allegations in support of liability are disputed.

After the Clerk of Court issued a certificate of default as to both Defendants Christopher D'Addario and Great River Properties LLC ("Great River"), ECF No. 35, the plaintiffs moved for a default judgment against the defendants pursuant to Federal Rule of Civil Procedure 55(b). ECF No. 37. The defendants failed to respond to the Court's Order to Show Cause, ECF No. 39, and the Court found that the plaintiffs were entitled to a default judgment against the defendants and referred the case to Magistrate Judge Moses for an inquest with respect to the nature of the judgment to be entered, ECF No. 43.

Thereafter, Magistrate Judge Moses issued an R&R recommending that (a) a default judgment be entered against

2

Defendant D'Addario on the plaintiffs' claim for conversion; (b) nominal damages of $1,000 be awarded on that claim; (c) the plaintiffs' claims against Great River be dismissed; (d) the $5,000 bond previously posted by the plaintiffs be discharged; and (e) the Court issue a permanent injunction prohibiting D'Addario and others acting in concert with him from interfering with, encumbering, or in any way disturbing plaintiffs' possession and control of the seven Joffrey Domain Names. See R&R at 25. There were no objections to the foregoing recommendations, see Pls.' Obj. at 1, ECF No. 51, and they are well-founded and should be adopted.

Magistrate Judge Moses also recommended that the plaintiffs' claim against Defendant D'Addario under the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), be dismissed. See R&R at 17-22. The Magistrate Judge found that the plaintiffs failed to state a cause of action under the ACPA because the plaintiffs failed to allege facts showing that the Joffrey Ballet mark had acquired "secondary meaning" and therefore was not "famous" or "distinctive" as required to establish a claim for cybersquatting. See id. The plaintiffs objected to this last recommendation and submitted an additional affidavit and other exhibits in support of its argument that the Joffrey Ballet mark had, in fact, acquired secondary meaning. See Pls.' Obj. at 1-3.

3

**II.**

The Court reviews de novo each of the elements of the Report and Recommendation to which an objection has been filed. See 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). The Court may adopt those portions of the Report and Recommendation "to which no specific, written objection is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous."[1] United States Sec. & Exch. Comm'n v. Collector's Coffee Inc., 603 F. Supp. 3d 77, 83 (S.D.N.Y. 2022) (citing Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 149 (1985)). There are no portions of the R&R that were not objected to that are clearly erroneous.

In resolving any objections to the Report and Recommendation, the Court "may . . . receive further evidence" and consider such additional materials. Fed. R. Civ. P. 72(b)(3).

**III.**

**A.**

The purpose of the ACPA is "to provide clarity in the law for trademark owners by prohibiting the bad-faith and abusive registration of distinctive marks as Internet domain names with the intent to profit from the goodwill associated with such

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

4

marks[.]" Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc., 202 F.3d 489, 495 (2d Cir. 2000). "To successfully assert a claim under the ACPA, a plaintiff must demonstrate that (1) its marks were distinctive at the time the domain name was registered; (2) the infringing domain names complained of are identical to or confusingly similar to plaintiff's mark; and (3) the infringer has a bad faith intent to profit from that mark." Webadviso v. Bank of Am. Corp., 448 F. App'x 95, 97 (2d Cir. 2011).

In this case, there is no dispute as to the second and third elements the plaintiffs' ACPA claim. The only question is whether the plaintiffs have established the first element. See R&R at 18. With regards to the first element, a mark can be "distinctive" pursuant to the Lanham Act in one of two ways. See Wal-Mart Stores, Inc. v. Samara Bros., 529 U.S. 205, 210 (2000). A mark is "inherently distinctive" if "its intrinsic nature serves to identify a particular source." See id. Alternatively, and as relevant to this case, a mark that is not inherently distinctive can nevertheless "acquire distinctiveness" if it has developed "secondary meaning" -- that is, if "in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself." See id. at 211 (citing Inwood Laboratories, Inc. v. Ives Laboratories, Inc., 456 U.S. 844, 851, n.11 (1982)).

5

"The existence of secondary meaning is a question of fact with the burden of proof on the party claiming exclusive rights in the designation." Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., 973 F.2d 1033, 1041 (2d Cir. 1992). The Court of Appeals for the Second Circuit has identified six, non-exclusive factors that bear on this inquiry: "(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and, (6) length and exclusivity of the mark's use." Christian Louboutin S.A. v. Yves Saint Laurent American Holdings, Inc., 696 F.3d 206, 226 (2d Cir. 2012).

In this case, the plaintiffs allege specific facts in their objections to the R&R and attached exhibits that support a finding of the existence of secondary meaning. First, the affidavit of Frank Merwin, submitted by the plaintiffs as Exhibit 1 to their objections to the R&R, demonstrates that the plaintiffs' advertising expenditures are projected to exceed $400,000.00 this year. See Merwin Aff. at 5, ECF No. 51-1. The plaintiffs also advertise and conduct auditions in multiple countries around the world. See id. at 4-5. The plaintiffs' substantial advertising expenditures and recruitment efforts weigh in favor of a finding of secondary meaning associated with the Joffrey Ballet mark.

6

Second, the plaintiffs submit evidence that consumers associate the Joffrey Ballet mark with the plaintiffs. There is significant consumer engagement with several of the plaintiffs' social media cites. For example, 4,008,450 unique users engaged with the plaintiffs' Facebook content over the course of ninety days. See id. at 4. Moreover, 1,089,560 unique users engaged with the plaintiffs' Instagram content over the same time period. See id.

Additionally, the sales success of the school weighs in favor of a finding of secondary meaning. The plaintiffs submitted evidence demonstrating that the Joffrey Ballet School's fall audition tour "attracts upwards of 10,000 participants each year." See Monticciolo-Davis Aff. at 3, ECF No. 1-9. Also, "more than 100,000 [students] have auditioned, trained, and taken classes [at] the Joffrey Ballet School brand operated by Plaintiffs." See Merwin Aff. at 3. Furthermore, "the Joffrey Ballet School mark[] has been the alma mater for many dancers who have excelled in major ballet companies worldwide, confirming the mark's association with high-caliber dance education." See id. The number of participants, students, and notable alumni all support the sales success of the Joffrey Ballet School, which in turn weighs in favor of secondary meaning.

Another factor that supports the finding of secondary meaning is Defendant D'Addario's attempts to plagiarize. As noted by the Magistrate Judge, Defendant D'Addario attempted to sell Joffrey Ballet merchandise through a new domain name and exercised unauthorized control over the plaintiffs' domain names. See R&R at 7, 16.

Finally, the length and exclusivity of the mark's use weighs in favor of secondary meaning. The Joffrey Ballet School was established in 1953, and the school and its mark were transferred to Center for American Dance, Inc. in 1976. See Merwin Aff. at 3, 6.

Accordingly, the balance of the factors weighs in favor of the existence of secondary meaning as required for distinctiveness. The plaintiffs have therefore stated a cause of action for a violation of the ACPA against Defendant D'Addario.

**B.**

Under the ACPA, the plaintiffs are entitled to recover an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the Court considers just. See 15 U.S.C. § 1117(d). Because the Magistrate Judge did not determine the amount of statutory damages to be awarded for violating the ACPA, the case is remanded to Magistrate Judge Moses for a Report and Recommendation on the appropriate amount of damages for the violation of the ACPA and

8

a determination of the proper award of attorney's fees, if any. The Magistrate Judge should also recommend the form of an appropriate judgment to be entered in this case.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the Court adopts in part and rejects in part the Magistrate Judge's Report and Recommendation. This case is remanded to the Magistrate Judge for further proceedings described above. The plaintiffs shall serve this Memorandum Opinion and Order on the defendants and file proof of service on the docket by **July 15, 2024.** The Clerk is also directed to close all pending motions.

**SO ORDERED.**

Dated:   New York, New York
         July 9, 2024

                                    _____
                                           John G. Koeltl
                                    **United States District Judge**